**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**SHELLY G. DICKERSON,**

   **Plaintiff,**

**v.**

**JAMES L. PERDUE and
JAMES L. PERDUE
d/b/a J. L. PERDUE,**

   **Defendants.**                                    **Case No. 07-cv-206-DRH**

<u>**MEMORANDUM & ORDER**</u>

**HERNDON, District Judge:**

### I.  INTRODUCTION

Defendants James L. Perdue and James L. Perdue d/b/a J. L. Perdue ("Perdue" or "Defendants") have moved to dismiss Plaintiff Shelly G. Dickerson's suit, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)**, for lack of personal jurisdiction over Defendants (Doc. 9).  In the alternative, Defendants seek a **Rule 12(b)(3)** dismissal for improper venue, a transfer of venue, pursuant to **28 U.S.C. § 1404**, to the United States District Court of Nebraska or a **Rule 12(b)(6)** dismissal for failure to state a claim for which relief can be granted (*Id.*).  Plaintiff has timely opposed both the dismissal and transfer of venue (Doc. 12).  For the following reasons, Defendants' request for dismissal or transfer is unavailing.

## II.  BACKGROUND

Plaintiff's Complaint asserts that diversity jurisdiction exists between the parties, pursuant to **28 U.S.C. § 1332**, and that the acts giving rise to her claims occurred within this District (Doc. 4, ¶ 1).  As she is a citizen of Illinois, she states that complete diversity of citizenship exists between the parties as Defendants are citizens of and reside in Nebraska (*Id*. at ¶¶ 2-3).  Further, Plaintiff seeks damages, including punitive damages, in excess of $75,000.00 (*Id*. at pp. 4-5).  The Complaint consists of two counts, one for defamation (*Id*. at ¶¶ 19-23) and the other for tortious interference with a contract (*Id*. at ¶¶ 24-28).

The following provides a factual account of Plaintiff's allegations, as stated in her Complaint (Doc. 4).  Plaintiff was employed by Perdue as a driver and drove Perdue's tractor trailer truck in interstate commerce.  With both Perdue and the church's permission, while home in Smithton, Illinois, Plaintiff parked the truck in the parking lot of St. Michael's Church in Padderborn, Illinois, approximately two miles from her home.  Also with Perdue's permission, Plaintiff was allowed a five-day absence from work.  On this fifth day of leave, Plaintiff contacted Perdue to tell him that she had fallen ill and could not drive the truck.  However, Perdue demanded Plaintiff drive the truck that day back to Kearney, Nebraska, pay for her own way home and was unresponsive to any of her following calls for the rest of the day.  That same day, Plaintiff was contacted by the deputy sheriff of St. Clair County, Illinois, and told to call the Buffalo County, Nebraska's Sheriff's Department.  When she spoke to someone at the Buffalo County Sheriff's Department, Plaintiff was

questioned as to the location of the truck.  Plaintiff was also told by a representative of the Buffalo County Sheriff's Department that Perdue had accused her of making illegal runs with the truck.  She told the police that the truck was parked on the parking lot of St. Michael's Church in Padderborn, Illinois.  Two days later, the truck was picked up from the parking lot by persons unknown.  Plaintiff's employment with Defendants was thereafter terminated.

Plaintiff subsequently applied for a job and was offered employment by Contract Transport, Inc. ("Contract") in St. Louis, Missouri.  However, Plaintiff did not report for her first day of work because she was under the mistaken belief that she did not have a job with Contract.  Her mistaken belief was due to a telephone call she received from someone claiming to be a Contract representative, who informed Plaintiff that Contract had decided not to hire her.

### III.  DISCUSSION

**A.    Personal Jurisdiction**

Defendants first seek a dismissal of Plaintiff's suit upon the basis that this Court lacks personal jurisdiction over Defendants.  Once a defendant moves to dismiss pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)**, a plaintiff has the burden of establishing the existence of personal jurisdiction over an out of state defendant.  ***Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (internal citations omitted)**.  A plaintiff must provide sufficient evidence to establish at least a *prima facie* case of personal jurisdiction.

***Turnock v. Cope***, **816 F.2d 332, 333 (7th Cir.1987)**.

Because this Court sits in Illinois and further, because this action is a diversity case, the Court will have personal jurisdiction over non-resident Defendants only if an Illinois court would have personal jurisdiction. ***FMC Corp. v. Varonos***, **892 F.2d 1308, 1310 (7th Cir. 1990)(citing FED. R. CIV. P. 4(e))**. Therefore, Plaintiff must demonstrate that personal jurisdiction over both Defendants in this case complies with (1) the Illinois long-arm statute, (2) Illinois constitutional law, and (3) federal constitutional law. ***RAR, Inc. v. Turner Diesel, Ltd.***, **107 F.3d 1272, 1276 (7th Cir. 1997)**. Moreover, because the Illinois long-arm statute[1] "'permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions,'" the analysis then becomes a two-prong examination: (1) determining whether the applicable state long arm statute is satisfied and (2) whether exercise of jurisdiction is consistent with the constitutional requirements of due process. ***Hyatt Int'l Corp. v. Coco***, **302 F.3d 707, 714 (7th Cir. 2002) (quoting *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000); *see also FMC Corp. v. Varonos*, 892 F.2d 1308, 1311 n.5 (7th Cir. 1990)**.

The Illinois long-arm statute, **735 ILL. COMP. STAT. 5/2-209**, lists the statutory grounds for which personal jurisdiction over a defendant may be exercised

---

[1] The Illinois long-arm statute, **735 ILL. COMP. STAT. 5/2-209(c)**, reads:
A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.

by an Illinois court.  Personal jurisdiction can be either "general," as stated in **735 ILL. COMP. STAT. 5/2-209(b)**, "specific," as enumerated under **735 ILL. COMP. STAT. 5/2-209(a)**, or for "any other basis permitted by the Illinois and United States Constitutions," as stated in **735 ILL. COMP. STAT. 5/2-209(c)**.  General jurisdiction over an out of state defendant is not dependent upon whether the underlying issues in plaintiff's suit arose out of or related to defendant's contacts with the forum state." *RAR, Inc.*, **107 F.3d at 1277**.  Instead, an out of state defendant is subject to general jurisdiction of the forum state when the defendant has "continuous and systematic general business contacts" with the forum state.  *Id.*  On the other hand, an out of state defendant may be subject to specific jurisdiction of the forum state when the issues in plaintiff's suit arise out of or relate to the defendant's minimum contacts with the forum.  *Id.*  These minimum contacts, if "purposely availed" by defendant towards the forum state, should give the out of state defendant "fair warning" that its activities may warrant imposition of the forum state court's jurisdiction, such that the out of state defendant could "reasonably anticipate being haled into court" there. *Burger King Corp. v. Rudzewicz*, **471 U.S. 462, 472-76 (1985)**.

  **1. General Jurisdiction**

    Defendants contend this Court cannot exercise general jurisdiction over them, pursuant to **735 ILL. COMP. STAT. 5/2-209(b)**, as they are not citizens of Illinois nor do they conduct business here.  While Plaintiff argues in her Response

(Doc. 12) that general jurisdiction exists, the Court finds she has not met her burden of proof in this regard.  Even though the Court accepts jurisdictional allegations as true unless negated by a defendant's affidavits, *see O'Hare Intern. Bank v. Hampton*, **437 F.2d 1173, 1176 (7th Cir. 1971)**, in this case, Plaintiff has no such allegations in her Complaint to establish general jurisdiction over Defendants in Illinois.  In her Response, Plaintiff asserts general jurisdiction exists over Defendants because they hired Plaintiff in Illinois, she parked the truck in Illinois, fueled the truck in Illinois and hauled freight in Illinois (Doc. 12, p. 3).  Plaintiff, however, offers no affidavits or other evidentiary support to substantiate her assertions.[2]  Further, the allegations in her Complaint make no reference to any businesslike activities occurring in Illinois.  At most, she alleges that she lives in Illinois and that she parked the truck in Smithton, Illinois, while she took a five-day leave of absence from work to be at home.  This is hardly enough to evidence that Defendants' maintained "continuous and systematic" contacts with Illinois or that they purposefully availed themselves of the benefits and protections offered by Illinois.

### 2.    Specific Jurisdiction

Defendants also argue that they do not meet any of the enumerated items that would amount to specific jurisdiction under **735 Ill. Comp. Stat. 5/2-209(a)**.  Countering, Plaintiff argues specific jurisdiction applies in this instance, as

---

[2]  Although Plaintiff does attach an exhibit to her Response, a transcript of voice messages left on her answering machine by James Purdue, these also do not show Defendants' continuous and systematic business contacts with Illinois.

her claims arise from Defendants' conducting of business in Illinois as well as Defendants' commission of tortious acts in Illinois.[3]   The Court has already addressed the lack of evidence to support the assertion that Defendants are subject to personal jurisdiction in Illinois due to their business contacts.   Therefore, although there are numerous statutory grounds providing for specific jurisdiction listed in **735 ILL. COMP. STAT. 5/2-209(a)**, at issue is only whether Defendants' alleged commission of a tortious act subjects either of them to personal jurisdiction in Illinois.  **735 ILL. COMP. STAT. 5/2-209(a)(2)**.

As previously stated, Plaintiff's Complaint consists of two counts against Defendants: one of defamation and the other for tortious interference with a contract. In Count I, Plaintiff alleges Defendants defamed her by intentionally, wantonly and maliciously making false accusations against her of criminal conversion and theft (Doc. 4, ¶¶ 19-23).  Plaintiff alleges these accusations were made by Defendants to the Buffalo County, Nebraska Sheriff's Department, which, in turn, were made to the St. Clair County, Illinois Sheriff's Department.  Plaintiff was then contacted by the St. Clair County Sheriff's Department and told to call the Buffalo County, Nebraska's Sheriff's Department.  When she spoke to someone at the Buffalo County Sheriff's Department, Plaintiff was questioned as to the location of the truck, whereby she was told that Perdue had accused Plaintiff of making illegal runs with the truck.

---

[3]  In her Response (Doc. 12), Plaintiff includes, albeit rather vaguely, the argument regarding specific jurisdiction via commission of a tortious act in her argument section opposing transfer of venue, which the Court also takes into account (*Id*. at pp. 4-7).

Count II asserts a claim against Defendants for tortious interference with a contract – specifically, Plaintiff's employment.  Plaintiff alleges, in Count II, that after she was fired by Defendants over the discrepancy of leaving the truck parked in the church parking lot near her residence, she later applied for a job at Contract Transport, Inc. ("Contract") in St. Louis, Missouri (Doc. 4, ¶ 14).  Contract offered Plaintiff a job and also allegedly informed her that since she had applied for the job, Defendants had contacted Contract numerous times, complaining Plaintiff had stolen their truck and/or used the truck to make illegal runs (*Id*. at ¶ 15).  Later that same day, Plaintiff alleges she was telephoned by someone claiming to be a representative for Contract and proceeded to tell Plaintiff they were no longer going to hire her (*Id*. at ¶ 16).  Due to this telephone call, Plaintiff assumed she did not get the job with Contract and therefore, did not report for work (*Id*. at ¶ 17).  Plaintiff later found out she was not actually contacted by a Contract representative (*Id*. at ¶ 18).  Thus, Plaintiff alleges that it was Defendants who either called or had another person call at their behest, to tell Plaintiff she was not hired by Contract, thereby intentionally, wantonly and maliciously interfering with her employment with Contract (*Id*. at ¶¶ 24-28).

In support of their argument that specific jurisdiction is lacking, Defendants contend that the alleged tortious act was *not* committed in Illinois (Doc. 10, pp. 6-7).  Instead, Defendants argue that their only alleged tortious "telephonic contact" was with the Buffalo County Sheriff's Department, located in Nebraska, and Contract, located in St. Louis, Missouri.  The Court finds that when the "tortious act"

is not physically tangible, such as a telephone call, it is not the situs of where the telephone call was placed or received, but instead, the situs of where the resultant injury to Plaintiff was suffered. ***See, e.g., Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997)("There is no tort without injury . . . and the state in which the injury (and therefore the tort) occurs may require the wrongdoer to answer for its deeds even if events were put in train outside its borders."); *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1142 (7th Cir. 1975)("[I]t is now well settled that the term 'tortious act' inevitably includes the concept of injury, and . . . the situs of the tort is the place where the injury occurs."); *Gray v. American Radiator & Standard Sanitary Corp.*, 176 N.E.2d 761, 762-63 (Ill. 1961)("To be tortious an act must cause injury.  The concept of injury is an inseparable part of the phrase."); *Kalata v. Healy*, 728 N.E.2d 648, 653 (Ill. App. Ct. 2000)(where the defendant argued that any alleged fraud only occurred via telephone calls made by the defendant in California, the Court found "the jurisdictional requirement [to be] satisfied [when] the defendant perform[ed] an act or omission that cause[d] an injury in Illinois and the plaintiff alleged the act was tortious in nature")(citation omitted).**

Here, although Defendants allegedly made the telephone calls giving rise to Plaintiff's claims *outside* of Illinois to persons also located *outside* of Illinois, the injury caused to Plaintiff occurred *in* Illinois.  Further, the Court finds Defendants intended the brunt of the injury caused by the alleged defamatory statements to be

felt in Illinois.   Construing the allegations of the Complaint in favor of Plaintiff, Defendants knew Plaintiff resided in Illinois and that the truck was parked near Smithton, Illinois.   Therefore, they also knew that making the telephone call to the Buffalo County Sheriff's Department to report Plaintiff's suspected criminal activities would inevitably lead to contact with local Illinois law enforcement authorities and to Plaintiff herself.   In fact, Plaintiff spoke directly to a representative of the Buffalo County Sheriff's Department, who relayed to her Defendants' alleged defamatory statements.   It is clear from the allegations of the Complaint that Defendants sought to have Plaintiff investigated by law enforcement authorities and possibly even arrested.

The same holds true for Plaintiff's claim of tortious interference with a contract, despite Defendants' assertion that the only telephonic contact in this regard was made to Contract personnel in St. Louis, Missouri.   Again, when viewing Plaintiff's allegations in the most favorable light, Defendants deliberately targeted Plaintiff, an Illinois citizen, as a victim of their tortious acts.   The alleged interference with Plaintiff's employment with Contract lead Plaintiff to believe she did not have a job with Contract even though she actually did and therefore, Plaintiff did not report to work.   Thus, the injury resulting from Defendants' tortious act directly affected Plaintiff in Illinois and *not* Missouri.   Thus, Defendants' actions, purposefully directed towards an Illinois resident in her home state, it is evident that Defendants could reasonably expect to be haled into court in Illinois to answer for their conduct.   Accordingly, the Court finds Defendants had the requisite minimum

contacts with Illinois to establish specific jurisdiction.

Yet it is still necessary for the Court to determine that finding personal jurisdiction exists over Defendants comports with "'traditional notions of fair play and substantial justice.'" ***World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)(quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))**.  These "fairness considerations" include: the burden on the defendant, the forum State's interests in adjudicating the dispute, the plaintiff's interest in obtaining relief, and the interstate judicial system's interests in obtaining the most efficient resolution, and the several States' interests in furthering fundamental substantive social policies.  ***Id.; see also Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992)**.  Considering these factors, the Court finds Defendants' burden would not be unduly; Nebraska is not so far away from Illinois, especially given today's ease of communications capabilities.  In fact, there is not likely to be much need for Defendants' to be in Illinois, except for possible depositions, evidentiary hearings and/or trial.  Further, because the alleged torts occurred to an Illinois citizen while in Illinois, this state has a significant interest in adjudicating the dispute as well as a great interest in furthering fundamental substantive social policies which discourage such tortious behavior.  Plaintiff also has significant interest in obtaining relief, evidenced most plainly by filing this action.  Additionally, the interstate judicial system's interests are furthered by resolution of this case in Illinois, the state where the injury occurred.  The Court finds the due process requirements have been met

and that Defendants are subject to personal jurisdiction in this forum for Plaintiff's claims as alleged in her Complaint.[4]   As such, Defendants' Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 9) must be denied.

**B.      Rule 12(b)(3) Motion to Dismiss for Improper Venue**

In the alternative, Defendants have moved for this suit to be dismissed pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(3)** for improper venue.  The burden is upon Plaintiff to prove venue is proper.  ***AGA Shareholders, LLC v. CSK Auto, Inc.*, 467 F. Supp. 2d 834, 842 (N.D. Ill. 2006)**.  When considering a **Rule 12(b)(3)** Motion, the Court must take all allegations in the Complaint as true, resolving factual inconsistencies and drawing all reasonable inferences in favor of Plaintiff.  ***Interlease Aviation Investors v. Vanguard Airlines*, Inc., 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003)**.  Facts outside the Complaint may also be considered by the Court in its analysis of venue.  ***AGA*, 467 F. Supp. 2d at 843**.  Plaintiff bases jurisdiction solely on the diversity of the parties, pursuant to **28 U.S.C. § 1332**, so venue is determined in accordance with the requirements of **28 U.S.C. § 1391(a)**. Section 1391(a) provides that venue is proper in diversity actions only in (1) a judicial district "where any defendant resides," (2) a judicial district where "a substantial part of the events giving rise to the claim occurred," or (3) a judicial district in which "any defendant is subject to personal jurisdiction at the time the

---

[4]  The Court also finds that the Illinois due process requirements were met, as "[c]ourts may look to the federal courts' constructions of federal due process for guidance in interpreting Illinois due process."  *See Rollins v. Ellwood*, **565 N.E.2d 1302, 1316 (Ill. 1990)**.

action is commenced, if there is no district in which the action may otherwise be brought." **28 U .S.C. § 1391(a)**.

Defendants are not residents of Illinois, so the first prong of § 1391(a) will not apply here.  The third prong also does not apply, as it is only to be used when there is "no district in which the action may otherwise be brought."  Yet, in this case, the action could be brought in Nebraska, as Defendants currently are residents there.  Thus, only the second prong is at issue to determine if venue in the Southern District of Illinois is proper: whether "a substantial part of the events giving rise to the claim occurred" in this venue.

Unlike a personal jurisdiction analysis, analyzing proper venue under § 1391 does not consider a defendant's contacts with the forum state, but instead focuses on "the location of the events giving rise to the cause of action." ***Master Tech Products, Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002)(citing *Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994))**.  This "substantial part of the events" analysis allows courts to look "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim," including those that are "part of the historical predicate for the instant suit." ***Id.* (quoting *Uffner v. La Reunion Francaise,* S.A., 244 F.3d 38, 42 (1st Cir. 2001))**.  This analysis, in turn, provides "a more holistic view of the acts underlying a claim." ***Id.* (quoting *Uffner*, 244 F.3d at 42 n.6)**.

Defendants contend that the alleged tortious acts giving rise to Plaintiff's

Case 3:07-cv-00206-DRH-CJP   Document 18   Filed 07/20/07   Page 14 of 21   Page ID #83

claims did not occur in Illinois.  Instead, Defendants argue that the allegations of the Complaint show Defendants made the telephone calls from Nebraska and involved communicating either with the Sheriff's Department in Buffalo County, Nebraska or Contract personnel in St. Louis, Missouri.  As this Court has previously found, Defendants' alleged tortious behavior was specifically directed towards causing injury to Plaintiff in Illinois.  The injury stemming from Defendants' alleged telephone calls occurred in Illinois.  Further, Plaintiff has attached to her Response a transcript of several voice messages left on her answering machine by Perdue (Doc. 12, Ex. 2). This transcript evidences telephone calls made by Defendants directly to Plaintiff, in which Defendants threatened, among other things, that Plaintiff would go to jail. Without the injury, Plaintiff would not have her claims, therefore, the situs where the injury occurs or is experienced by Plaintiff is to be considered part of the "historical predicate," or "a substantial part of the events."  Accordingly, Defendants' alternate request for a dismissal for improper venue is denied.

**C.    Transfer of Venue**

If venue is determined to be proper in the Southern District of Illinois, Defendants next seek a transfer of venue to the United States District Court of Nebraska, pursuant to **28 U.S.C. § 1404** (Doc. 9).  Under **28 U.S.C. § 1404(a)**, transfer of venue is permissible when doing so would be convenient for the parties and witnesses and in the interest of justice.  The transferee venue must also be a district where the case "might have been brought" originally.  **28 U.S.C. § 1404(a)**.

Page 14 of 21

The purpose of **§ 1404(a)** "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." ***Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)**.  The statute does not, however, "indicate the relative weight to be accorded each [**§ 1404(a)**] factor." ***Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 n.3 (7th Cir. 1986)("[T]hese factors are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case.")**.  The burden of establishing the greater "convenience" of the transferee forum lies with the movant. ***Id.* at 220 (citations omitted)**.  Ultimately, the decision to allow a transfer of venue "is committed to the sound discretion of the trial judge."  ***Id.* at 219 (collecting cases)**.  In determining whether a motion under **§ 1404(a)** should be granted, the Court must seek to promote the efficient administration of justice and not merely the private interests of the parties. ***North Shore Gas Co. v. Salomon, Inc.*, 896 F. Supp. 786, 791 (N.D. Ill. 1995)**.

Analyzing Defendants' Motion under **§ 1404(a)** requires the Court conduct what is essentially a "balancing test" between the private interests of the parties and the public interests of the courts. ***See, e.g., Stock v. Integrated Health Plan*, 2006 WL 3420289 at \*2 (S.D. Ill. 2006)**.  Therefore, the Court will first examine whether litigating this case in the Central District of Illinois would prove more convenient for the parties and witnesses.  Next, the Court will determine whether a transfer would be in the interest of justice.

### 1.    Private Interests

In weighing the private interests involved, the Court should consider: "1) plaintiff's choice of forum, 2) the situs of material events, 3) the relative ease and access to sources of proof, 4) the convenience of the parties, and 5) the convenience of the witnesses." ***Amoco Oil Co. v. Mobil Oil Corp.***, **90 F. Supp. 2d 958, 960 (N.D. Ill. 2000)(citations omitted)**.

In support of a transfer, Defendants argue that Plaintiff has failed to plead sufficient facts establishing their requisite contact with Illinois.  However, as previously discussed, the Court has found otherwise and so this argument is not well-taken.  Therefore, the only other private interest factor Defendants assert is that they are citizens of Nebraska and as such, Illinois would be an inconvenient place of trial.  The mere fact that the forum would be "inconvenient" or "unfair" to Defendants does not outweigh Plaintiff's choice of forum.  When a plaintiff has chosen his home state as the forum, it is to be given substantial deference, even though it is but one factor for a court to consider.  ***Wen Products, Inc. v. Master Leather, Inc.***, **899 F. Supp. 384, 385-86 (N.D. Ill. 1995)(citations omitted)**.  Defendants fail to show how other private interest factors would weigh in favor of a transfer to Nebraska.  The truck which was part of the initial dispute between the parties, was parked in a parking lot in Illinois.  Defendants' tortious activities were directed towards Plaintiff in Illinois.  Plaintiff's "injury" was in Illinois.  The representatives of Contract are located in St. Louis, Missouri.  If needed as potential witnesses, this forum is

much more convenient than Nebraska.  Additionally, law enforcement officials at the St. Clair County Sheriff's Department, other potential witnesses, are located in this forum.  Despite the fact that personnel from the Buffalo County Sheriff's Department would find Nebraska a more convenient forum, this does not serve to convince the Court a transfer of venue is proper.  The Court finds the balancing of the private interests weighs in favor of denying transferring venue to the United States District Court of Nebraska.

### 2.    Public Interest

The "'interest of justice' is a separate component of a **§ 1404(a)** transfer analysis."  ***Coffey*, 796 F.2d at 220**.  When balancing the public interest, factors related to the efficient administration of the courts, rather than private considerations of the litigants, are traditionally considered.  ***Id.* at 221**.  These factors include: (1) the speed at which the case will proceed to trial, (2) the court's familiarity with the applicable law, (3) the relation of the community to the occurrence at issue, and (4) the desirability of resolving controversies in their locale. *See **Amoco Oil Co.*, 90 F. Supp. 2d at 962**.

Defendants offer nothing in the way of a public interest argument and therefore, the Court finds the public interest weighs in favor of also denying a transfer of venue.  The Court, sitting in the Southern District of Illinois, is therefore familiar with Illinois state law upon which Plaintiff bases her claims.  The Court also finds Illinois has an interest in resolving a controversy involving an Illinois citizen

allegedly injured by Defendants' tortious acts.  In conclusion, Defendants' alternative request for transfer of venue is denied.

**D.      Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

Defendants' final alternative request for relief asserts that Plaintiff is not entitled to punitive damages as she has failed to plead facts to establish Defendants' allegedly tortious conduct as being willful and wanton.  Plaintiff argues that her Complaint describes conduct that cannot be classified as anything but willful, wanton and deliberate.

When ruling on a motion to dismiss for failure to state a claim, the district court assumes as true all facts well-pled plus the reasonable inferences therefrom and construes them in the light most favorable to the plaintiff.  ***Fries v. Helsper***, **146 F.3d 452, 457 (7th Cir. 1998) (citing** ***Wiemerslage Through Wiemerslage v. Maine Township High School Dist. 207***, **29 F.3d 1149, 1151 (7th Cir. 1994))**.  The question is whether, under those assumptions, the plaintiff would have a right to legal relief.  ***Id***.  This standard also has been articulated:

> [U]nder "simplified notice pleading," . . . the allegations of the complaint should be liberally construed, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

***Lewis v. Local Union No. 100 of Laborers' Int'l Union***, **750 F.2d 1368, 1373 (7th Cir. 1984)(quoting** ***Conley v. Gibson***, **355 U.S. 41, 46-47 (1957))**.

The Seventh Circuit recently reiterated the liberal standard governing

notice pleading:

> Rule 8 was adopted in 1938, and *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), stressed that it does not require fact pleading.  It is disappointing to see a federal district judge dismiss a complaint for failure to adhere to a fact-pleading model that federal practice abrogated almost 70 years ago.  As citations in the preceding paragraphs show, however, this is among many similar dispositions that the Supreme Court and this court have encountered recently and been obliged to reverse.

***Vincent v. City Colleges of Chicago*, 485 F.3d 919, 924 (7th Cir. 2007)(footnote omitted); *See also Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998)**; ***Kaplan v. Shure Brothers, Inc.*, 153 F.3d 413, 419 (7th Cir. 1998)**.  However, in a recent opinion issued on May 21, 2007, the Supreme Court determined that ***Conley's*** famous "no set of facts" phrase "has earned its retirement."  ***Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1969 (May 21, 2007)**.

According to the Supreme Court, the threshold pleading requirement of **FEDERAL RULE OF CIVIL PROCEDURE 8** requires a complaint allege "enough facts to state a claim to relief that is *plausible* on its face" in order to survive a **Rule 12(b)(6)** Motion to Dismiss for failure to state a claim for which relief can be granted.  ***Id.* at 974 (clarifying that a "heightened fact pleading of specifics" is not required)(emphasis added)**.  In other words, the Supreme Court explained it was "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'" by providing "more than labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do . . . ."  ***Id.* at 1964-65 (alteration in**

original)(quoting *Papasan v. Allain*, **478 U.S. 265, 286 (1986)**).  The plaintiff must plead factual allegations which show the right to relief exists beyond mere speculation by "rais[ing] a *reasonable expectation* that discovery will reveal evidence" to substantiate the plaintiff's claims.  ***Id.* at 1965 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'")(quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)(emphasis added)).**

Following the ***Bell*** standard, the Court must determine whether the Complaint shows it is plausible that Plaintiff is entitled to relief on her claims against Defendants for defamation and tortious interference with a contract.  Reviewing the allegations, the Court finds Plaintiff has plead sufficient facts regarding Defendants' alleged tortious conduct to convince this Court that it is *plausible* that Plaintiff may be entitled to relief on her claims.  Therefore, her Complaint will survive Defendants' **Rule 12(b)(6)** Motion to Dismiss.

## IV.  CONCLUSION

Defendants' Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 9) is hereby **DENIED**, the Court finding Defendants subject to personal jurisdiction based upon the fact that the commission of a tortious act was found to have occurred within the forum, giving rise to specific jurisdiction under **735 ILL. COMP. STAT. 5/2-209(a)(2)**.  Further, the Court **DENIES** Defendants' alternate requests for relief: Rule 12(b)(3) dismissal for improper venue; § 1404

transfer of venue and a Rule 12(b)(6) dismissal for failure to state a claim for which relief can be granted.

**IT IS SO ORDERED.**

Signed this 20th day of July, 2007.


/s/          David   RHerndon
**United States District Judge**